| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL IX | | |
| BLANCA VARGAS CAMACHO<br><br>Apelada<br><br><br>V.<br><br><br>PLAZA LOÍZA CORPORATION<br><br>Apelante | KLAN202401004 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2022CV02772<br><br><br>Sobre:<br>Despido injustificado; Procedimiento sumario |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece ante nos Plaza Loíza Corporation (Plaza Loíza o apelante) en solicitud de que revisemos una *Sentencia* emitida el 30 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En el referido dictamen, el TPI declaró Ha Lugar la *Querella* por despido injustificado que presentó la señora Blanca Vargas Camacho (señora Vargas Camacho o apelada) contra Plaza Loíza. El Foro Primario concluyó que el despido de la apelada era injustificado, de acuerdo con la *Ley sobre Despidos Injustificados*, Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185a *et seq*. Por consiguiente, determinó que la apelante debía pagar una suma de $9,360.00 por concepto de mesada.

Por los fundamentos que expondremos a continuación, se confirma la determinación apelada.

---

[1] Apéndice de *Apelación*, Anejo 1. págs. 1-15. Archivada y notificada el 1 de noviembre de 2024.

**I.**

Este caso tuvo su origen el 11 de abril de 2022, cuando la señora Vargas Camacho presentó una *Querella* contra Plaza Loíza por despido injustificado. Para ello, optó por el trámite dispuesto en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.*[2] En esencia, adujo que era empleada regular de Plaza Loíza por siete (7) años, desde el 12 de enero de 2015 hasta el 17 de febrero de 2022, fecha en que fue despedida sin motivo específico. Ante ello, solicitó $9,360.00 por concepto de mesada, a razón de su salario más alto devengado de $360.00 semanales, así como el pago de otros gastos de litigio.

El 25 de abril de 2022, Plaza Loíza presentó una *Contestación a la Querella.*[3] En síntesis, alegó que la señora Vargas Camacho abandonó su empleo, por lo que entendía que no tenía derecho al remedio provisto por la *Ley sobre Despidos Injustificados, supra.* En la alternativa, planteó que medió justa causa para despedir a la apelada.

En específico, Plaza Loíza indicó que la señora Vargas Camacho se ausentó por cinco (5) días adicionales a los tomados por licencia de enfermedad para viajar a República Dominicana, sin su autorización. Además, arguyó que la apelada mostró un comportamiento insubordinado en múltiples ocasiones. A su vez, sostuvo que a la apelada se le aplicó una disciplina progresiva y se le amonestó por escrito en más de veinte (20) ocasiones.

Tras varios trámites procesales, el 26 de enero de 2023, Plaza Loíza presentó una *Moción de Sentencia Sumaria.*[4] Mediante esta, solicitó dictar sentencia sumaria a su favor al entender que no existía

---

[2] *Íd.*, Anejo 3, págs. 28-29.
[3] *Íd.*, Anejo 4, págs. 30-32.
[4] *Íd.*, Anejo 5, págs. 33-254.

una controversia sustancial sobre los hechos pertinentes, ya que solamente restaba atender las controversias de derecho sobre si la apelada abandonó su empleo y si fue despedida por justa causa.

Plaza Loíza indicó que existió justa causa para el despido de la señora Vargas Camacho, ya que ausentarse al empleo por más de tres (3) días laborales consecutivos constituyó abandono de trabajo y causa para su despido, a tenor con el Reglamento de Conducta de la empresa. Señaló que, tras tomar una licencia por enfermedad de catorce (14) días autorizada hasta el 7 de febrero de 2022, la apelada solicitó vacaciones para visitar a su suegra en República Dominicana. Esgrimió que aun cuando no autorizó las vacaciones por el déficit de personal en el *Money Room* que la apelada era encargada, esta se ausentó por cinco (5) días adicionales.

Por otro lado, el apelante sostuvo que amonestó a la señora Vargas Camacho sobre veinticinco (25) ocasiones por incumplimiento con las normas de la empresa. Al respecto, expuso que la apelada recibió varias "Acciones de Personal" entre el 22 de enero de 2015 y el 21 de enero de 2022 por omitir registrar las horas de entrada y salida, descuadres de dinero y su negativa a cubrir la hora de descanso de la supervisora del Frente de Servicio ante su preocupación de contraer COVID-19. Por ello, adujo que si la ausencia de la apelada no constituyó abandono de trabajo, su incumplimiento con las normas de la empresa configuró justa causa para su despido.

En respuesta, la señora Vargas Camacho presentó una *Oposición a Moción de Sentencia Sumaria.*[5] En su escrito, precisó que Plaza Loíza no demostró mediante evidencia admisible que su despido fue justificado. La apelada enfatizó que cumplió con las disposiciones de notificación previa a una ausencia del Reglamento de Conducta de

---

[5] *Íd.*, Anejo 6, págs. 255-281.

Plaza Loíza para notificar la probabilidad del fallecimiento de su suegra y solicitar días de vacaciones para visitarla. Asimismo, arguyó que no se podía alegar insubordinación de su parte, ya que solamente fue amonestada en una (1) ocasión desde que ocupó el puesto de encargada del *Money Room* cuando se negó a cubrir la hora de descanso de la supervisora del Frente de Servicio. Sobre el particular, planteó que del listado de tareas de su puesto no se encontraba cubrir el horario de descanso de otro empleado. Igualmente, argumentó que la mayoría de las "Acciones de Personal" eran irrelevantes para este caso, ya que ocurrieron en su puesto anterior.

Sometido el asunto ante su consideración, el 24 de marzo de 2024, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la solicitud de sentencia sumaria de Plaza Loíza.[6] El Foro *a quo* expuso que las partes presentaron declaraciones juradas contradictorias respecto a la fecha en que la señora Vargas Camacho debía regresar a su empleo. Destacó que el Reglamento de Conducta de Plaza Loíza carecía de un procedimiento escrito para las ausencias por situaciones familiares. Asimismo, acentuó que en tal etapa de los procedimientos, Plaza Loíza no había demostrado si la apelada incumplió con la política de comunicar continuamente el estatus de su ausencia y la fecha de regreso. Ante ello, determinó que no podía adjudicar la reclamación sumariamente, ya que existía controversia en torno a (1) la fecha en la que la apelada debía regresar a su trabajo y si contaba con la autorización de su patrono de reincorporarse a su trabajo el 14 de febrero de 2022 y (2) si la apelada se comunicó con su supervisora entre el 2 y el 7 de febrero de 2022.

En su determinación, el Foro Primario formuló las siguientes determinaciones de hechos:

1. La Sra. Vargas Camacho es una persona natural residente de San Juan, Puerto Rico.

---

[6] *Íd.*, Anejo 2, págs. 16-27.

2. Plaza Loíza es una corporación con fines de lucro debidamente autorizada para hacer negocios en Puerto Rico.

3. La Sra. Vargas Camacho comenzó a trabajar para Plaza Loíza el 12 de enero del 2015.

4. Al momento de su contratación, la Sra. Vargas Camacho recibió copias de las normas y políticas de Plaza Loíza, incluyendo: el Reglamento de Conducta, el Manual de Cajeros(as) y las Normas de descuadres para cajeras.

5. El Reglamento de Conducta establece la siguiente política de asistencia:

> Una buena asistencia a su trabajo es crítica para las operaciones de la empresa. Las ausencias y tardanzas injustificadas, así como la falta de notificación previa, aun en los casos en que dicha ausencia y tardanza estén justificadas, afecta la eficiencia y productividad de nuestras operaciones.
> […]
> 1. Cualquier ausencia y/o tardanza no justificada constituirá una violación de esta política y dará base para una medida disciplinaria.
> […]
> 3. Cuando un empleado sepa de antemano que estará ausente, que llegará tarde o que deberá salir antes de completar su jornada de trabajo, deberá avisar a su supervisor inmediato tan pronto lo sepa. Excepto por casos de fuerza mayor, la falta de notificación previa constituirá una violación de esta política y dará base para medidas disciplinarias.
> […]
> 8. En caso de ausencias de dos o más días, el empleado deberá llamar una a dos veces en la semana para indicar el estatus de su condición y la fecha posible de regreso.

6. El Reglamento de Conducta define el abandono de la siguiente manera: "Constituye abandono de trabajo el hecho de que un empleado se ausente por tres días laborales sin que se notifique la razón de su ausencia y/o justificación. Tal acción será causa de despido".

7. El Reglamento de Conducta define la insubordinación de la siguiente manera: "La negativa del empleado a obedecer una orden o instrucción de su Supervisor o del Gerente constituye una insubordinación que conllevará la imposición de medidas disciplinarias, lo que podría culminar en despido, dependiendo de la seriedad del caso".

8. Entre el 22 de enero de 2015 y el 21 de enero de 2022, la Sra. Vargas Camacho recibió 27 amonestaciones.

9. Las amonestaciones que se le entregaron a la Sra. Vargas Camacho en el periodo del 22 de enero de 2015 y el 15 de junio del 2018 fueron por descuadres en la caja registradora.

10. Las amonestaciones que se le entregaron a la Sra. Vargas Camacho en el periodo del 9 de julio del 2018 hasta el 10 de mayo del 2021 fueron por faltas al no ponchar sus horas de salida correctamente.

11. Desde el 30 de agosto de 2021, la Sra. Vargas Camacho fungió como la encargada del "*Money Room*".

12. El 21 de enero de 2022, la Sra. Vargas Camacho recibió una amonestación por escrito por no cumplir con las instrucciones de uno de sus supervisores. En particular, la Sra. Vargas Camacho se rehusó a cubrir la hora de "break" del empleado del "*Front End*" ("Frente de Servicio").

13. Las tareas del "Frente de Servicio" involucran trabajar en el piso de la tienda asistiendo a las y los empleados de caja. La Sra. Vargas Camacho se negó a cubrir el "Frente de Servicio" por temor a contagiarse de Covid-19, según describe la "Acción de Personal". La acción disciplinaria en esta "Acción de Personal" fue una orientación sobre la conducta de la empleada.

14. Luego de este suceso, la Sra. Vargas Camacho se acogió a una licencia por enfermedad de catorce (14) días, desde el 24 de enero hasta el 7 de febrero de 2022.

15. El 1 de febrero de 2022, la Sra. Vargas Camacho compró pasajes de avión hacia la República Dominicana.

16. El 2 de febrero de 2022, la Sra. Vargas Camacho se comunicó con su supervisora, la Sra. Rosa Dávila, para informar que tendría que salir por una emergencia de salud de su suegra.

17. La Sra. Vargas Camacho solicitó que se le cargaran los días adicionales a sus horas acumuladas por vacaciones.

18. El 7 de febrero de 2022, la Sra. Rosa Dávila le informó a la Sra. Vargas Camacho que no le habían autorizado los días por vacaciones según solicitados.

19. La Sra. Vargas Camacho tenía horarios de trabajo pautados para la semana del 7 al 13 de febrero del 2022.

20. La Sra. Vargas Camacho se ausentó el 7 de febrero de 2022.

21. La Sra. Vargas Camacho se ausentó el 8 de febrero de 2022.

22. La Sra. Vargas Camacho se ausentó el 9 de febrero de 2022.

23. La Sra. Vargas Camacho se ausentó el 10 de febrero de 2022.

24. La Sra. Vargas Camacho se ausentó el 11 de febrero de 2022.

25. La Sra. Vargas Camacho regresó a Puerto Rico el 11 de febrero de 2022.

26. La Sra. Vargas Camacho regresó a trabajar el 14 de febrero de 2022, y Plaza Loíza le despidió ese mismo día.

27. El 20 de abril de 2022, el Departamento de Trabajo y Recursos Humanos emitió una determinación sobre el despido de la Sra. Vargas Camacho donde determinó que:

> *Usted fue despedido de su empleo sin existir una razón aparente para su despido. Se considera que no incurrió en conducta incorrecta ya que su [ú]ltimo patrono no ofreció información que explicara de manera satisfactoria las causas para el despido.*
>
> *Se le declara elegible a recibir beneficios. Esta decisión está basada en la sección 4(b\*)(3) de la ley de seguridad de empleo de Puerto Rico.*

Eventualmente, el TPI celebró el juicio en su fondo durante los días 23 y 24 de octubre de 2024, en el que se presentó el testimonio de la señora Vargas Camacho, de la señora Suheidy Medina Ortiz, de la señora Luz Milagros Rosa Dávila y del señor Héctor Sánchez León.[7]

---

[7] Hacemos notar que las partes no nos pusieron en posición de evaluar los testimonios vertidos ante el Foro Primario, en vista de que no presentaron ante este Tribunal de Apelaciones la transcripción de la prueba oral.

Tras culminar el desfile de la prueba, el 30 de octubre de 2024, el Foro Primario emitió la *Sentencia* apelada en la que declaró Ha Lugar la *Querella* presentada por la señora Vargas Camacho y resolvió que su despido estuvo injustificado.[8] Por ello, ordenó a Plaza Loíza pagar $9,360.00 a la apelada por concepto de mesada, entre otras sumas.

En la referida *Sentencia*, el Foro Primario adoptó en su totalidad sus determinaciones de hechos formuladas en la *Resolución* del 24 de marzo de 2024 y añadió las siguientes basadas en la prueba desfilada en el juicio plenario:

1. Plaza Loíza actualmente cuenta con nueve sucursales, pero para el momento en que ocurrieron los hechos de este caso, contaba con ocho sucursales.
2. La Sra. Blanca Vargas Camacho trabajaba en el supermercado Plaza Loíza ubicado en [...] el Norte Shopping Mall.
3. Desde agosto de 2021, Luz Milagros Rosa Vargas es la gerente del supermercado Plaza Loíza que ubica en el Norte Shopping Mall.
4. Blanca Vargas se reportaba a Luz Rosa o a Héctor Sánchez.
5. El Sr. Héctor Sánchez era el asistente de Luz Rosa.
6. Desde el 2022 hasta la actualidad, los supermercados han tenido una tendencia de merma de empleados.
7. En el área de *Money Room* de Plaza Loíza se contabiliza el dinero, se hacen los cuadres, se atienden las ventas de tarjetas de regalo, *money orders*, lotería, giros postales y envíos por *Western Union*. Además, se cuadra el *petty cash* y se verifica que las ATH tengan dinero.
8. Por el manejo de giros postales y *money orders* la Oficina del Comisionado de [I[ntituciones Financieras (OCIF) regula el área de *Money Room*.
9. En Plaza Loíza el área de *Money Room* y el área de [*counter*] de servicio son áreas separadas, pero no es raro que un empleado del [*counter*] de servicio atienda asuntos del *Money Room* y viceversa.
10. Las tareas del [*counter*] de servicio y de *Money Room* están relacionadas, el [*counter*] de servicio ejecuta y el *Money Room* fiscaliza.
11. Desde el 16 de noviembre de 2019, Blanca Vargas estuvo encargada del *Money Room*, pero comenzó a cobrar lo correspondiente a esa plaza el 7 de diciembre de 2020.
12. Plaza Loíza utilizó el mismo formato de una acción disciplinaria para informar que la empleada Blanca Vargas Camacho está ejerciendo la posición de encargada del *Money Room* desde el 16 de noviembre de 2019 y solicita que le asignen el salario correspondiente a su posición[,] efectivo el lunes 7 de diciembre de 2020.
13. El horario de trabajo de Blanca Vargas era de 5:00 am a 2:00 pm.
14. Entre enero y febrero de 2022 Blanca Vargas era la única empleada encargada del *Money Room*.

---

[8] *Íd.*, Anejo 1, págs. 1-15. Archivada y notificada el 1 de noviembre de 2024.

15. En términos de sueldo, estar encargada del *Money Room* significaba un aumento, en comparación a meramente trabajar en el *Money Room.*

16. Mariely Reyes era una empleada del [*counter*] de servicio que para enero de 2022 estaba recibiendo entrenamiento para hacer labores del *Money Room.*

17. El 21 de enero de 2022, hubo necesidad de sustituir a Mariely Reyes en su trabajo por una hora, para que tomara su hora de almuerzo.

18. Héctor Sánchez le pidió a Blanca Vargas que la sustituyera y ésta se negó.

19. El reglamento de conducta de Plaza Loíza establece que si el empleado tiene alguna queja o excusa para no obedecer alguna orden de su Supervisor podrá exponer sus razones y acatará la decisión que tome el Supervisor al respecto, luego de escucharlo. Cuando se trate de un asunto de relevancia y el empleado no quede satisfecho con la decisión de su Supervisor, podrá acudir al Departamento de Recursos Humanos y/o Operaciones para discutir la situación, previa notificación al supervisor.

20. El mismo día, 21 de enero de 2021, Blanca Vargas hizo una carta dirigida a su supervisora, Luz Rosa, explicando la razón por la que no podía acatar la orden.

21. La razón para no acatar según el escrito fue porque tenía que cuidar una bebé de un año y no quería exponerse al COVID-19.

22. La Sra. Luz Rosa no excusó a Blanca Vargas de sustituir a Mariely Reyes en la hora de almuerzo ese día.

23. Blanca Vargas no quedó satisfecha con la decisión de la supervisora, pero no pudo ir al Departamento de Recursos Humanos.

24. El mismo día, 21 de enero de 2022, Luz Rosa le presentó a Blanca Vargas una acción disciplinaria por no haber acatado la orden. La acción consistió en [una] orientación.

25. Blanca Vargas no fue amonestada, sino orientada sobre [el] servicio al cliente y sobre lo que constituye un acto de subordinación.

26. El documento tiene cuatro clasificaciones de acción disciplinaria, orientación, amonestación verbal, amonestación escrita y suspensión de empleo y sueldo.

27. A raíz de este incidente, Blanca visitó a un médico pues se sentía ansiosa.

28. El Dr. Laborde Corretjer recomendó descanso en cama bajo tratamiento médico por 14 días hasta estabilizar al paciente. Esto es desde el 24 de enero hasta el 7 de febrero de 2022.

29. A solicitud de Luz Rosa, el 25 de enero, Blanca Vargas pasó por la tienda a llenar el formulario para trámite de licencia por enfermedad.

30. El 1 de febrero de 2022, […] Blanca Vargas se entera de que su suegra está en condición grave en la República Dominicana.

31. El mismo 1 de febrero, por instrucciones de su esposo[,] Blanca Vargas compra pasajes para ir a la República Dominicana del 2 al 18 de febrero.

32. El 2 de febrero[,] Blanca Vargas llamó a Recursos Humanos para informales la emergencia y le instruyeron que se comunicara con la tienda, que eso lo debía hablar con su supervisora.

33. Blanca Vargas se comunicó entonces con Luz Rosa para informarle de la emergencia familiar en la vecina Isla.

34. El medio de comunicación utilizado fue la aplicación de [WhatsApp].

35. Como única contestación, Luz Rosa, le pregunta a nombre de terceras personas: "me preguntan [quién] es el familiar["].

36. Acto seguido[,] Blanca Vargas contestó que era su suegra y Luz Rosa expresa "ok".

37. El 4 de febrero, Blanca Vargas se comunicó con Luz Rosa preguntando "qué ha pasado con lo [mío]".

38. Blanca Vargas se refería a la solicitud que le había [hecho] a Luz Rosa de que le cargara a vacaciones una semana adicional, luego del 7 de febrero, o sea hasta el 14 de febrero.

39. El 5 de febrero[,] Luz Rosa le contestó que llame a la tienda para hacer el proceso correctamente.

40. Blanca Vargas no pudo llamar el día 5, ni el 6 porque su esposo no se lo permitió.

41. El 7 de febrero[,] Blanca Vargas se comunicó con la tienda y le informaron que su licencia no había sido aprobada.

42. Blanca Vargas solicitó que le aprobaran una semana de vacaciones sin paga.

43. Blanca Vargas cambió el pasaje de regreso, regresando a Puerto Rico el 11 de febrero, para regresar a trabajar el 14 de febrero.

44. El 14 de febrero[,] Blanca Vargas comenzó a trabajar en su horario de trabajo regular, a las 5:00 am.

45. Pasados veinte minutos, Luz Rosa, en compañía del Sr. Romero[,] jefe [de] piso[,] le dijo que estaba despedida y la acompañó a recoger sus cosas para que se fuera.

46. El 14 de febrero de 2022[,] Plaza Loíza despidió a Blanca Vargas por abandono en el trabajo.

47. La decisión de despedirla fue tomada por Luz Rosa en conjunto con el departamento de Recursos Humanos.

48. Suheidy Medina Ortiz, directora de Recursos Humanos entiende que la ausencia de Blanca Vargas no estuvo justificada ya que no le autorizaron las vacaciones.

A la luz de lo anterior, el Foro apelado consignó que el Reglamento de Conducta de Plaza Loíza definía el abandono de trabajo como la ausencia de tres (3) días laborables consecutivos sin previa notificación y/o justificación, lo cual constituía una causa de despido. El TPI indicó que aun cuando la señora Medina Ortiz tuviese razón en su interpretación de que la ausencia de la apelada no estaba justificada por la empresa no autorizarla, la falta de justificación no era la única condición de despido dispuesta en el Reglamento de Conducta. Asimismo, estableció que aunque la señora Vargas Camacho estuvo ausente por cinco (5) días, comunicó su motivo. Por ello, reiteró que la apelada no abandonó su empleo, de acuerdo con el Reglamento de Conducta de Plaza Loíza.

De otra parte, el TPI puntualizó que el hecho de que Plaza Loíza ascendió de puesto a la señora Vargas Camacho demostró que las amonestaciones previas no fueron suficientemente determinantes o que la apelada superó las deficiencias de manera que merecía una

recompensa. De hecho, subrayó que la prueba reflejó que las amonestaciones eran mayormente recordatorios que no constituyeron acciones disciplinarias o correctivas graduales ni demostraron que la apelante verificó que la empleada corrigiera su conducta. En lo atinente a la amonestación por la insubordinación al no cubrir la hora de descanso de una empleada, estableció que la prueba documental develó que la acción disciplinaria se redujo a una mera orientación en la que no le advirtió a la apelada las consecuencias de continuar el patrón de conducta.

Con respecto a la notificación de la ausencia, el TPI puntualizó que hubo comunicación entre la señora Vargas Camacho y su supervisora, la señora Rosa Dávila. Sin embargo, expuso que de la prueba no surgió que Plaza Loíza advirtió las consecuencias de no personarse a trabajar los días 7,8 o 9 de febrero. Indicó, al contrario, la prueba demostró que la apelada estaba bajo la impresión de que debía reportarse a trabajar el 14 de febrero.

Así las cosas, el Foro apelado estableció que el apelante no demostró que el comportamiento de la señora Vargas Camacho puso en riesgo la seguridad, el orden o la eficiencia del lugar de trabajo. Sobre el particular, precisó que si bien la prueba reflejó el problema del *Money Room* en que las ventas de un día se sumaban a la siguiente fecha, no le otorgó credibilidad al hecho de que la apelada era la única empleada que podía atender tal asunto. Además, manifestó que la prueba desfilada no develó si este problema surgió mientras la apelada tomaba sus días de enfermedad o se encontraba en República Dominicana. Asimismo, enfatizó que la prueba no demostró que el apelante le comunicó la urgencia de tal situación a la señora Vargas Camacho. En tal circunstancia, el TPI estableció que Plaza Loíza no le dio oportunidad a la apelada para corregir la situación, ni aplicó medidas correctivas o disciplinarias graduales.

Inconforme, el 8 de noviembre de 2024, Plaza Loíza presentó un recurso de apelación ante nos en el que planteó que el TPI cometió los siguientes errores:

**PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DECLARAR NO HA LUGAR LA MOCIÓN DE SENTENCIA SUMARIA[,] PUES DE LAS DETERMINACIONES DE HECHOS DE LA RESOLUCIÓN DEL 24 DE MARZO DE 2024 SE DESPRENDIÓ QUE LA APELADA ABANDONÓ SU EMPLEO EN PLAZA LOÍZA Y QUE EXISTÍA JUSTA CAUSA PARA SU DESPIDO[.]

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DECLARAR HA LUGAR LA QUERELLA LUEGO DE LA CELEBRACIÓN DEL JUICIO[,] PUES DE LA PRUEBA DESFILADA SE DESPRENDIÓ QUE LA APELADA ABANDONÓ SU EMPLEO Y EXISTÍA JUSTA CAUSA PARA SU DESPIDO[.]

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DECLARAR HA LUGAR LA QUERELLA, A BASE DE UNA APRECIACIÓN ERRÓNEA DE LA PRUEBA DOCUMENTAL Y TESTIFICAL EN EL JUICIO[.]

En esencia, el apelante arguyó que el Foro Primario realizó una lectura errada del Reglamento de Conducta de Plaza Loíza al concluir que en este caso no se configuró un abandono por parte de la señora Vargas Camacho. En primer lugar, precisó que la prueba vertida ante el TPI demostró que la apelada, quien era la única empleada en su clasificación ocupacional, abandonó su empleado al ausentarse por cinco (5) días laborables consecutivos sin autorización de la empresa, lo cual entendía que constituyó justa causa para su despido, sin más. Plaza Loíza planteó que lo anterior emergía de las determinaciones de hechos del Foro apelado, sin la necesidad de pasar prueba sobre el abandono de trabajo. Por ello, argumentó que la decisión apelada era contraria a las determinaciones de hechos consignadas por el TPI.

No obstante lo anterior, señaló que los testimonios de las partes vertidos en el Foro Primario eran contradictorios respecto a si la señora Vargas Camacho contactó al Departamento de Recursos Humanos para informar su situación familiar y si prosiguió el procedimiento de la empresa para solicitar los días de vacaciones. A su vez, hizo notar que la apelada compró los boletos aéreos previo a

solicitar los días de vacaciones. Asimismo, puntualizó que la señora Vargas Camacho solicitó los días de vacaciones el mismo día en que debía retornar a su empleo tras culminar su licencia de enfermedad, el 7 de febrero de 2022, sin que estuviese imposibilitada de comunicar su situación familiar los días 2, 3, 4, 5 y 6 de febrero de 2022. Cónsono con lo anterior, arguyó que la prueba desfila levantó dudas respecto a su credibilidad, ya que alegar que su esposo no le permitió realizar llamadas hasta el 7 de febrero de 2022 constituyó prueba de referencia por no ser testigo. Además, esgrimió que la señora Vargas Camacho se contradijo al indicar que no realizó llamadas telefónicas desde República Dominicana debido al alto costo, ya que el registro de llamadas reflejó que gastó más de $99.25 al realizar llamadas en *roaming* desde ese país a varias localidades, de las cuales solo $1.20 fueron por las tres (3) llamadas que realizó a Plaza Loíza el 7 de febrero de 2022. Asimismo, alegó que la credibilidad de la testigo quedó minada al testificar que su suegra no tenía COVID-19 al viajar a República Dominicana, cuando declaró lo contrario en su deposición. Esto, máxime que se negó a realizar las tareas impartidas por su supervisor por temor a contagiarse del COVID-19 y contagiar a su hija mejor de un año.

En segundo lugar, Plaza Loíza manifestó que existía justa causa para el despido de la señora Vargas Camacho por incurrir en un patrón de incumplimientos con el Reglamento de Personal y las normas de la empresa, razón por la que recibió veintisiete (27) amonestaciones. Sostuvo que en el juicio no se pasó prueba sobre la gradación de las amonestaciones ni sobre los actos de corroboración de corrección de la conducta de la apelada. En tal sentido, expresó que era un contrasentido que el TPI minimizara las amonestaciones de la apelada como recordatorios. Además, resaltó que a la señora Vargas Camacho se le amonestó el 21 de enero de 2022 por incumplir con las instrucciones impartidas por su supervisor de cubrir la hora

de descanso de una empleada del Frente de Servicio. Según Plaza Loíza, dicho acto constituyó insubordinación e infracción a los deberes básicos de los empleados, quienes debían realizar cualquier responsabilidad que le fuese asignada por un supervisor.

En su alegato, la señora Vargas Camacho subrayó que no existía duda de que el TPI actuó de manera imparcial, sin pasiones ni prejuicio al interpretar la prueba desfilada y concluir que su despido fue injusto. La apelada sostuvo que en este caso únicamente existían cuatro (4) controversias: 1) si incurrió en abandono de empleo, 2) si se comunicó con su supervisora inmediata durante los días 2 al 7 de febrero de 2022, 3) si la instrucción era regresar a trabajar el 7 o el 14 de febrero de 2022 y 4) si las acciones disciplinarias fueron suficientes para su despido. Por ello, planteó que era inmeritorio dilucidar si realizó llamadas telefónicas a otras localidades o si su suegra tenía COVID-19 al momento de visitarla.

La apelada destacó que el Foro Primario tuvo suficiente prueba para asegurarse que se comunicó con su supervisora por lo menos en cuatro (4) ocasiones en el período del 2 al 7 de febrero de 2022, por lo que no abandonó su empleo. De igual manera, sostuvo que el TPI le otorgó credibilidad a su testimonio de que el 7 de febrero de 2022 se le notificó la denegatoria a su solicitud de licencia por vacaciones y se le instruyó regresar a trabajar el 14 de febrero de 2022. Especificó que más aún, recibió su itinerario de trabajo para la semana del 14 al 20 de febrero de 2022.

Asimismo, la señora Vargas Camacho sostuvo que el Foro apelado concluyó que las veintisiete (27) amonestaciones que recibió eran meros recordatorios de menor envergadura que no justificaron su despido. Al respecto, arguyó que la amonestación del 21 de enero de 2022 no fue determinante para su despido, ya que su negativa a cubrir el turno de descanso de otro empleado solamente generó una orientación verbal. De esta manera, señaló que la conclusión del TPI

en que su despido fue injustificado se tomó de manera imparcial, informada y sustentada con la prueba admitida en evidencia.

En atención a los errores señalados, procedemos a exponer la normativa jurídica aplicable a este recurso.

**II.**

**A. Apreciación de la prueba**

Como norma general, los tribunales apelativos no intervendremos con la apreciación de la prueba reflejada en las determinaciones de hechos del Tribunal de Primera Instancia en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. *Gómez Márquez, et als. v. Periódico El Oriental, et als*, 203 DPR 783 (2020); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 753 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Ramos Milano v. Wal-Mart Puerto Rico*, 168 DPR 112 (2006); *Rolón v. Charlie Car Rental*, 148 DPR 420 (1999). Es decir, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realizó el juzgador de hechos. *McConnell Jiménez v. Palau*, 161 DPR 734 (2004). El fundamento de la deferencia es que el juez de instancia tuvo la oportunidad de observar toda la prueba presentada y observar el comportamiento y las reacciones de los testigos, por lo que se encuentra en mejor situación que el tribunal apelativo para considerarla. *Sepúlveda v. Departamento de Salud*, 145 DPR 560 (1998). Así que, "**ante la presunción de corrección que revisten las determinaciones del foro primario, quien desee impugnar las mismas deberá colocar al tribunal revisor en posición de atender correctamente sus planteamientos sobre la apreciación y la credibilidad de la prueba oral desfilada**". *Pueblo v. Pérez Delgado*, 211 DPR 654, 674 (2023) (Énfasis nuestro).

En lo que nos concierne, la Regla 20 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 20 dispone que

cuando una parte señala un error en la apreciación de la prueba oral o con la suficiencia de esta, dicha parte debe tramitar una exposición estipulada de la prueba o una exposición narrativa estipulada, en cumplimiento con lo dispuesto en la Regla 76.1 del mismo Reglamento, *supra*.

### B. Despido injustificado

El Estado tiene un interés apremiante en regular las relaciones obrero-patronales con el fin de evitar prácticas injustas de trabajo e implementar una clara política pública de protección de los derechos de los empleados. *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 374 (2001). Así, pues, la *Ley sobre Despidos Injustificados, supra*, tiene el propósito de desalentar los despidos injustificados mediante la imposición de remedios económicos. *Ruiz Mattei v. Commercial Equip. Fin., Inc.*, 2024 TSPR 68, 214 DPR ___ (2024); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

En tal sentido, el Artículo 1 de la *Ley sobre Despidos Injustificados, supra*, sec. 185a, establece que todo empleado que trabaje mediante remuneración, contratado sin tiempo determinado y que fuere despedido sin que haya mediado justa causa tendrá derecho a recibir una indemnización o mesada por el tiempo trabajado para el patrono. *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 771 (2022); *Rodríguez Gómez v. Multinational Ins.*, 207 DPR 540, 549-550 (2021). Sin embargo, para que el empleado pueda aprovecharse de la presunción de despido injustificado, tiene el peso de la prueba inicial para demostrar que, ciertamente, fue despedido. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894 (2011).

En dicha legislación se incorporó el estándar de justa causa como limitación a todo despido. *Díaz v. Wyndham Hotel Corp., supra*, págs. 374-375. Es decir, no existe una prohibición absoluta en contra del despido, ya que el patrono puede plantear la defensa de justa causa. *Íd.*; *Rodríguez Gómez v. Multinational Ins., supra*, pág. 549;

*Romero et als. v. Cabrer Roig et als.*, 191 DPR 643, 651 (2014). Al respecto, el Artículo 2 de la *Ley sobre Despidos Injustificados, supra,* sec. 185b, dispone lo siguiente:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. [...]

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

## III.

En el presente caso, Plaza Loíza planteó que el TPI incidió al declarar No Ha Lugar su solicitud de sentencia sumaria y Ha Lugar la *Querella* presentada por la apelada al apreciar erróneamente la prueba presentada en el juicio plenario. Según el apelante, desfiló prueba suficiente para demostrar que la señora Vargas Camacho abandonó su empleo y que existió justa causa para su despido. Es decir, los señalamientos de error versan sobre la apreciación de la prueba vertida en el Foro *a quo.*

Así las cosas, el 13 de noviembre de 2024, este Foro Apelativo emitió una *Resolución* en la que le otorgó un término de treinta (30) días, el cual fue prorrogado, para que las partes realizaran esfuerzos con el fin de lograr una transcripción estipulada del juicio plenario. En tal virtud, el 31 de enero de 2025, Plaza Loíza nos informó que las partes estipularon la transcripción de la prueba oral. Empero, posterior a ello, las partes presentaron sus respectivos alegatos sin

que elevaran en su totalidad la transcripción de la prueba oral. Cabe destacar que Plaza Loíza indicó en su alegato suplementario que la Regla 21 del Reglamento de este Tribunal, *supra*, R. 21, le permitía hacer referencia a las porciones de la transcripción que fueran relevantes a sus señalamientos de error. Así la cosas, considerada la transcripción parcial presentada, consideramos que lo reflejado en ella no nos permite descartar la apreciación de prueba efectuada por el Foro Primario, por lo que corresponde otorgarle deferencia.

Estimadas las múltiples determinaciones de hecho formuladas por el TPI en su *Resolución* de 21 de marzo de 2024 y en su *Sentencia* de 30 de octubre de 2024, confirmamos la determinación apelada. Sépase que este Tribunal apelativo de ordinario no puede descartar la prueba y las conclusiones de derecho que el TPI aquilató, fundamentó y plasmó en su determinación, en ausencia de circunstancias extraordinarias, pasión, prejuicio, parcialidad o error manifiesto. En sus alegatos, Plaza Loíza no planteó que el Foro Primario haya incurrido en alguna de las anteriores circunstancias para no otorgarle deferencia a la apreciación de la prueba y revertir el dictamen apelado. Su reclamo va dirigido principalmente a aspectos sobre la credibilidad que merecen los testimonios vertidos en el procedimiento, aspecto que como se sabe, es uno en el que los foros revisores deben gran deferencia a los tribunales de primera instancia. Ello, cuando, como es sabido, el Foro *a quo* tuvo la oportunidad de observar el comportamiento de todos, y está en una mejor posición, en ausencia de las circunstancias previamente indicadas, para aquilatar la credibilidad que le merecen cada uno de los testimonios. Efectuado dicho análisis, no se nos ha puesto en posición de descartar los razonamientos del Foro apelado, por lo que procede que confirmemos su dictamen.

**IV.**

Por las razones que anteceden, se confirma la Sentencia apelada.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
